**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SSAB ALABAMA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 17-0175-WS-C** |
| ) | |
| **KEM-BONDS, INC.,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on defendant Thyssenkrupp Materials NA, Inc.'s "Motion to Dismiss for Forum *Non Conveniens* or, in the Alternative, to Transfer Pursuant to 28 U.S.C.A. § 1404(a)" (doc. 36). The Motion has been briefed and is ripe for disposition.

**I.      Background.**

Plaintiff, SSAB Alabama, Inc., brought an Amended Complaint (doc. 24) against defendants, Kem-Bond, Inc. and Thyssenkrupp Materials NA, Inc. In summary, that pleading alleges that SSAB purchased a product called EZ-POR (commonly known as "tap-hole sand") from defendant Kem-Bonds for use in its steel-making process. According to SSAB, this EZ-POR product "catastrophically failed," causing SSAB to suffer "significant property loss damages" and "other damages including significant production delays and disruption resulting in lost profits." (Doc. 24, ¶ 3.) The Amended Complaint further alleges that Kem-Bonds obtained the defective EZ-POR from defendant Thyssenkrupp, which manufactured and/or distributed the product. (*Id.*, ¶ 2.)

Based on these allegations, SSAB advances state-law causes of action against defendants for breach of contract (Count One), breach of warranty (Count Two), and the Alabama Extended Manufacturer's Liability Doctrine (Count Three). In Count One, SSAB asserts that Kem-Bonds breached its direct contracts with SSAB as set forth in two enumerated purchase orders. SSAB's contract claim against Thyssenkrupp arises from a contract between Thyssenkrupp and Kem-Bonds, on the theory that "SSAB was … a third-party beneficiary of the contract whereby Kem-

Bonds acquired the tap-hole sand from" Thyssenkrupp.  (Doc. 24, ¶ 10.)  The Amended
Complaint alleges that Thyssenkrupp breached its contract with Kem-Bonds by (i) failing to
provide industry standard tap-hole sand, (ii) failing to perform chemical analysis and testing of
the product prior to its delivery to SSAB, and (iii) failing to notify SSAB that a different supplier
was being used for the tap-hole sand.  In Count Two, SSAB alleges that (i) Kem-Bonds breached
express warranties to SSAB set forth in the purchase orders, as well as implied warranties of
merchantability and fitness for a particular purpose; and (ii) Thyssenkrupp breached implied
warranties to SSAB, including implied warranties of merchantability and fitness for a particular
purpose.  And Count Three is a claim of products liability under the AEMLD against both
defendants for selling and/or manufacturing EZ-POR that was in a defective condition and
unreasonably dangerous to SSAB as the ultimate user or consumer.

   Of critical importance to the pending Motion to Dismiss or Transfer is a forum-selection
clause found in the pre-printed form contract between Thyssenkrupp and Kem-Bonds (the "TK
Contract") for the subject EZ-POR product.[1]  That provision states, in relevant part, as follows:

> "The laws of the State of Illinois, excluding its conflict of laws principles, shall
> govern the interpretation and construction of any contract and the rights and
> obligations of the parties hereunder. … ***Any litigation or claims by you against us
> arising from any contract must be brought by you exclusively in the state or
> federal courts located in Cook County, Illinois.***"

(Doc. 36-2, § IX.1 (emphasis added).)  In its Motion to Dismiss or Transfer, Thyssenkrupp seeks
to enforce Section IX.1 against SSAB, based on SSAB's unequivocal stance that it is a third-
party beneficiary of the TK Contract.  SSAB opposes the Motion.  For its part, defendant Kem-
Bonds has elected not to be heard.

---

[1]     That contract is neither attached to nor specifically set forth in the Amended
Complaint.  Ordinarily, litigants may not rely on facts outside the pleadings for purposes of a
motion to dismiss.  *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in
reviewing Rule 12(b)(6) motion, court must "limit[] our review to the four corners of the
complaint").  However, "the court may consider a document attached to a motion to dismiss
without converting the motion into one for summary judgment if the attached document is (1)
central to the plaintiff's claim and (2) undisputed," in the sense that "the authenticity of the
document is not challenged."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).
Thyssenkrupp maintains, with no objection from SSAB, that these criteria are satisfied here;
therefore, the TK Contract will be considered in resolving this Motion.

## II.      Analysis.

As noted, Section IX.1 of the TK Contract is a forum-selection clause requiring claims against Thyssenkrupp "arising from" that contract to be brought "exclusively in the state or federal courts located in Cook County, Illinois."  Four years ago, the Supreme Court explained in some detail how such clauses are to be construed and enforced by federal courts.  In particular, the Court explained that "Section 1404(a) … provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district."  *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 134 S.Ct. 568, 579, 187 L.Ed.2d 487 (2013).  By contrast, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atlantic Marine*, 134 S.Ct. at 580.

Here, the forum-selection clause sought to be enforced designates the proper forum as being state or federal courts in Cook County, Illinois; therefore, Thyssenkrupp has properly framed its Motion in terms of both § 1404(a) and the doctrine of *forum non conveniens*.  Fortunately, the legal standard and analysis are the same in each scenario.  *See Atlantic Marine*, 134 S.Ct. at 580 ("because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum").  Because "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," the *Atlantic Marine* Court explained, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."  134 S.Ct. at 581 (citations omitted); *see also Stiles v. Bankers Healthcare Group, Inc.*, 637 Fed.Appx. 556, 562 (11th Cir. Jan. 26, 2016) ("Only under extraordinary circumstances unrelated to the convenience of the parties should a court decline to enforce a forum-selection clause.") (citations and internal quotation marks omitted).  "The party seeking to avoid the forum selection clause bears the burden of showing exceptional circumstances, predicated on public interest considerations to justify disturbing the forum selection clause."  *McArthur v. Kerzner Int'l Bahamas Ltd.*, 607 Fed.Appx. 845, 847 (11th Cir. Mar. 30, 2015).  A forum-selection clause entails a waiver of the parties' private rights to challenge the preselected forum; therefore, all private-interest factors weigh entirely in favor of that forum, and "a district court may consider arguments about public-interest factors only" by a litigant resisting enforcement of a contractually valid forum-selection

clause. *Atlantic Marine*, 134 S.Ct. at 582.[2]  "Because those factors will rarely defeat a transfer

motion, the practical result is that forum-selection clauses should control except in unusual

cases." *Id.*

Thyssenkrupp's argument in support of its Motion is straightforward.  The TK Contract

contains a valid forum-selection clause specifying that any claim against Thyssenkrupp arising

from that contract must be brought in Cook County, Illinois.  SSAB purports to be a third-party

beneficiary of the TK Contract.  Third-party beneficiaries have routinely been deemed bound by

forum-selection clauses contained in the contracts they are seeking to enforce.  *See, e.g., Stiles*,

637 Fed.Appx. at 562 ("A third party is bound by a forum-selection clause where the party's

rights are completely derivative of those of the [signing party] – and thus 'directly related to, if

not predicated upon' the interests of the [signing party].") (citations omitted).[3]  And,

Thyssenkrupp argues, there are no public policy reasons why the forum-selection clause should

not be enforced in this matter.

---

[2]      "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.6.

[3]      *See also Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2nd Cir. 2013) ("where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses") (citation omitted); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 & n.7 (7th Cir. 1993) (explaining that "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound," and indicating that "it may be true that third-party beneficiaries of a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements"); *Nordt v. Colina Ins. Ltd.*, 2017 WL 4225550, *6 n.3 (S.D. Fla. Sept. 22, 2017) ("A number of Florida cases suggest third-party beneficiaries to a contract are bound by that contract's forum selection clause.").  The analysis is unchanged under Illinois law, if the choice-of-law provision in Section IX.1 is enforced.  *See Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 185 (Ill.App.Ct. 2014) ("a court may exercise personal jurisdiction over a defendant by enforcing a forum selection clause against it, even though it was not a signatory to the contract containing the clause, where it was closely related to the dispute such that it became foreseeable that the nonsignatory would be bound, regardless of whether the non-signatory is a defendant or a plaintiff in the subject litigation"); *DMC Machinery America, Corp. v. Heartland Machine & Engineering, LLC*, 2016 WL 6524947, *3 (N.D. Ill. Nov. 2, 2016) ("Under federal[ and] Illinois … law, a forum-selection clause may be enforced against a third party.").

-4-

In response, SSAB advances a pair of arguments that the forum-selection clause in the TK Contract does not warrant transfer of its claims to Illinois.[4]  First, SSAB maintains that its "claims against TK (except, arguably, SSAB's Third Party Beneficiary claim) are not within the scope of the Forum Selection Clause."  (Doc. 42, at 4.)  Again, on its face the forum-selection clause in the TK Contract applies to "[a]ny litigation or claims by [Kem-Bonds] against [Thyssenkrupp] arising from any contract."  As a third-party beneficiary, SSAB would be bound by that provision just as Kem-Bonds would be.  Evidently, SSAB's position is that its claims against Thyssenkrupp do not <u>arise from</u> the TK Contract.  But the "arising from" language telegraphs a broad interpretation.  *See, e.g., Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) (choice-of-law provision covering "all disputes arising out of or in connection with" parties' agreement "is clearly meant to be read broadly," and reaches claims of negligent/ defective manufacture that are necessarily connected to the agreement).  Indeed, "where the dispute occurs as a fairly direct result of the performance of contractual duties …, then the dispute can fairly be said to arise out of or relate to the contract in question." *International Underwriters AG v. Triple I: International Investments, Inc.*, 533 F.3d 1342, 1348-49 (11th Cir. 2008) (citation omitted); *see also Bahamas Sales Associate, LLC v. Byers*, 701 F.3d 1335, 1340-41 (11th Cir. 2012) (similar).[5]

Contrary to SSAB's conclusory assertion, all of plaintiff's claims against Thyssenkrupp occurred "as a fairly direct result of the performance of contractual duties."  After all, the contractual duties that Thyssenkrupp performed were to supply EZ-POR to Kem-Bonds.  All of SSAB's claims against Thyssenkrupp flow directly from that activity.  In Count One, SSAB

---

[4]     Notably, those arguments omit any suggestion that the forum-selection clause in the TK Contract is not contractually valid, that it does not reach SSAB as a purported third-party beneficiary, or that the choice-of-law provision embedded in that clause is invalid or unenforceable for any reason.  The Court declines to explore *sua sponte* any such issues that the parties have not raised in briefing the Motion.

[5]     Similar principles prevail under Illinois law.  Indeed, Illinois courts have explained that "forum selection clauses have been held to apply not merely to contract claims involving the terms of the contract in which the clause appears, but also to other claims that are otherwise connected to the contract, such as tort claims arising from the contract. … Where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain as to the appropriate forum for litigation."  *Solargenix*, 17 N.E.3d at 182 (citations and internal marks omitted).

alleges that Thyssenkrupp breached the TK Contract by supplying defective tap-hole sand that it had failed to test before delivery.  In Count Two, SSAB alleges that Thyssenkrupp breached certain implied warranties by supplying defective tap-hole sand under the TK Contract.  And in Count Three, SSAB alleges Thyssenkrupp sold defective, unreasonable dangerous tap-hole sand under the TK Contract, giving rise to an AEMLD claim.  Under any reasonable viewing of these claims, they all occur "as a fairly direct result of the performance of contractual duties," such that they fit comfortably within the scope of the forum-selection clause set forth in the TK Contract.[6] The Court therefore finds unpersuasive SSAB's contention that "[t]he claims against TK … are not within the scope of the Forum Selection Clause" (doc. 42, at 4).

Second, SSAB insists that "[t]he granting of TK's Motion would be against the public interest."  (Doc. 42, at 7.)  The "public interest" factors catalogued by the Supreme Court as affecting the convenience of the forum consist of the following: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (citation and internal quotation marks omitted); *see also Atlantic Marine*, 134 S.Ct. at 581 n.6 (similar).  Plaintiff's argument implicates none of these recognized public-interest factors.

---

[6]     The Court understands, of course, that the implied warranties that SSAB accuses Thyssenkrupp of breaching are created by "operation of law," as plaintiff argues.  (Doc. 42, at 6.) But to say that a claim for breach of implied warranty is not a contract claim is not to say that such a claim does not "relate to" a contract or does not occur as a fairly direct result of the performance of duties under the contract.  The TK Contract created a duty for Thyssenkrupp to supply EZ-POR to Kem-Bonds.  In fulfilling its performance duty under that contract, Thyssenkrupp is alleged to have furnished EZ-POR that was neither merchantable nor fit for its intended purpose.  Under any reasonable interpretation of these factual allegations, Count Two arises as a fairly direct result of Thyssenkrupp's performance duties under the TK Contract, so as to "arise from any contract" for purposes of the forum-selection clause in Section IX.1.  In arguing otherwise, SSAB conflates the analytically distinct concepts of whether a claim is contractual in nature, on the one hand, and whether a dispute occurs as a fairly direct result of performance of contractual duties, on the other.  The latter inquiry is what matters for purposes of applying the forum-selection clause, and SSAB articulates no argument why that question might reasonably be answered in the negative here.

More generally, the Supreme Court has emphasized that public-interest factors "will rarely defeat a transfer motion," such that "the practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 134 S.Ct. at 582. SSAB has failed to meet its heavy burden of showing exceptional or extraordinary circumstances, to-wit: that this is such an unusual case that the forum-selection clause in the TK Contract should not govern. *See id.* at 583 ("As the party acting in violation of the forum-selection clause, J-Crew must bear the burden of showing that ***public-interest factors overwhelmingly disfavor a transfer***.") (emphasis added); *McArthur*, 607 Fed.Appx. at 847 (party opposing transfer pursuant to forum-selection clause "bears the burden of showing exceptional circumstances").

It appears that SSAB's "public interest" argument is, fundamentally, that this Court should not enforce the forum-selection clause in the TK Contract (which would otherwise mandate an Illinois forum for SSAB's claims against Thyssenkrupp) because there is a conflicting forum-selection clause in the contracts (actually purchase orders) between SSAB and Kem-Bonds (the "KB Contracts") pursuant to which Kem-Bonds supplied EZ-POR to SSAB. Specifically, Paragraph 20 of the KB Contracts reads as follows:

> "Governing Law: The laws of the jurisdiction applicable to SSAB's plant site specified on the face of this Order shall apply to and govern the interpretation, validity and enforceability of this Order …. ***Supplier hereby attorns to the exclusive jurisdiction of the courts of such jurisdiction.***"

(Doc. 42, Exh. B, at 3, 6 (emphasis added).) The SSAB "plant site" listed on both purchase orders is located in Axis, Alabama. As the Court understands it, SSAB's position may be summarized as follows: (i) SSAB's claims against defendant Kem-Bonds are governed by the forum-selection clause set forth in the KB Contracts; (ii) that forum-selection clause confers exclusive jurisdiction on Alabama courts for SSAB's claims against Kem-Bonds; (iii) the KB Contracts' forum-selection clause must be enforced, meaning those claims must remain in Alabama courts; and (iv) therefore, the TK Contract's forum-selection clause should not be enforced because it would offend judicial economy to have part of this case litigated in Alabama and part of this case litigated in Illinois. (Doc. 42, at 7-9.)

Even assuming that Paragraph 20 means what SSAB says it means and reaches all of its claims asserted against Kem-Bonds,[7] there remains a significant logical gap in this line of reasoning.  In effect, SSAB's position is that the forum-selection clause in the TK Contract should not be enforced because it designates a different forum (Illinois) than the Alabama forum delineated in the forum-selection clause in the KB Contracts.  Implicit in this argument, however, is the premise that the KB Contracts somehow deserve primacy over the TK Contract (*i.e.*, that as between the forum-selection clause in the TK Contract and the forum-selection clauses in the KB Contracts, the latter should be enforced and the former should be disregarded as inconsistent with the latter).  But SSAB offers no basis in law or fact why that should be.  By all appearances, both sets of contracts rest on an equal footing for enforcement purposes.  Stated differently, SSAB has identified no reason (and the Court is aware of none) why, as between the divergent forum-selection clauses, the one in the KB Contracts should be enforced and the one in the TK Contract should not.  Accordingly, SSAB's contention that enforcing the TK Contract's forum-selection clause would disserve the interest of judicial economy because it provides for a different venue than the KB Contracts' forum-selection clause is not persuasive.  For all that SSAB has argued, there is no apparent reason why the TK Contract's forum-selection clause is any less deserving of enforcement than the KB Contracts' forum-selection clause.  SSAB is asking this Court to choose one over the other, apparently for no more rigorous reason than SSAB's preference for the forum recited in the KB Contracts.  This, in turn, contravenes the Supreme Court's admonition that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. … In all but the most unusual cases, … 'the interest of justice' is served by holding parties to their bargain."  *Atlantic Marine*, 134 S.Ct. at 583.

---

[7]     No party has suggested that the forum-selection clause in the KB Contracts is not enforceable; therefore, the undersigned declines to tackle that issue *sua sponte*.  It does bear noting, however, that the meaning and reach of Paragraph 20 are not entirely clear.  Use of the jargon "attorns" is potentially problematic; after all, *Black's Law Dictionary* defines the term "attorn" to mean either "[t]o agree to be the tenant of a new landlord" or "[t]o transfer (money, goods, etc.) to another."  Neither definition squarely fits the term's usage in Paragraph 20, thereby raising questions as to that provision's plain meaning.  Moreover, nothing in Paragraph 20 defines the scope of the forum-selection clause or explains which claims or disputes it does or does not reach.  These and other potential obstacles to application of Paragraph 20 are set aside for another day because no one is challenging them at this time.

SSAB has made no showing that this is one of "the most unusual cases." Certainly, SSAB may lament the possibility of litigating parallel suits in separate fora. But courts in analogous circumstances have routinely found that *Atlantic Marine* calls for enforcement of the forum-selection clause, notwithstanding objections grounded in fears of duplicative litigation or judicial economy. *See, e.g., Valspar Corp. v. E.I. DuPont de Nemours and Co.*, 15 Supp.3d 928, 934-35 (D. Minn. 2014) ("[T]he Court does not believe the efficiency and economy achieved by trying interrelated claims in one forum should trump the forum-selection clauses agreed to by Valspar. … [A]llowing efficiency and economy to rule the day would effectively swallow *Atlantic Marine*'s holding in every case with multiple defendants."); *Crede CG III, Ltd. v. 22nd Century Group, Inc.*, 2017 WL 280818, *16 (S.D.N.Y. Jan. 20, 2017) (opining that "the Court is concerned that limiting *Atlantic Marine* to its precise facts, to govern only in two-party cases to which only one forum selection clause applies, would allow 'any clever party to a lawsuit' to plead around a valid forum selection clause," and therefore enforcing forum-selection clause, severing counts affected by it, and transferring them to agreed-upon forum); *Nelson v. Aramark Sports and Entertainment Services, LLC*, 2015 WL 1014579, *3 (D. Utah Mar. 9, 2015) ("Lower courts have found that *Atlantic Marine*'s unequivocal language regarding the force of forum-selection clauses applies even when it results in duplicative litigation. … The above opinions follow with the definitive language in *Atlantic Marine* favoring transfer, whereas Aramark's judicial economy argument ignores that language. Aramark's judicial economy argument is insufficient to avoid transfer."); *Harper County Com'n of Kansas v. Flat Ridge 2 Wind Energy LLC*, 2014 WL 4377750, *2 (D. Kan. Sept. 4, 2014) (enforcing forum-selection clause and reasoning that "while there may be some duplication of effort or expenses involved if the court dismisses Count II … and it is refiled in Harper County District Court, the court does not believe this case is extraordinary or that the public-interest factors 'overwhelmingly disfavor' dismissal of Count II"); *Carmouche Ins., Inc. v. Astonish Results, LLC*, 2014 WL 2740464, *6-7 (M.D. La. June 17, 2014) (finding plaintiff's "contention that there are conflicting choice of forum clauses that are unreasonably prejudicial and burdensome … unpersuasive" and granting defendant's motion to sever and transfer); *Excentus Corp. v. Giant Eagle, Inc.*, 2014 WL 923520, *10 (W.D. Pa. Mar. 10, 2014) (transferring subset of claims subject to a valid forum-selection clause even where party argued that it "would be a waste of judicial resources" to do so, and reasoning that "[t]he court will not 'override' the parties' agreement with respect to where certain claims should

be tried"); *1-Stop Financial Service Centers of America, LLC v. Astonish Results, LLC*, 2014 WL 279669, *10 (W.D. Tex. Jan. 23, 2014) ("The Court … has determined the two forum selection clauses are both valid and should be enforced.  Therefore, severance is appropriate.").

In short, the Court concludes that SSAB has made no showing that the public-interest factors overwhelmingly disfavor enforcement of the forum-selection clause contained in the TK Contract.  As such, SSAB has failed to meet its burden under *Atlantic Marine*.  This is not an unusual or extraordinary case; therefore, the forum-selection clause is properly enforced.  By enforcing the TK Contract's forum-selection clause as to SSAB's claims against Thyssenkrupp and transferring those claims to Illinois, the Court neither negates nor undermines the KB Contracts' forum-selection clause as to SSAB's claims against Kem-Bonds; rather, those claims will be retained here, thereby giving full effect to both forum-selection provisions, just as the district courts in the foregoing opinions did, in fulfillment of the teachings of *Atlantic Marine*.  Pursuant to *Atlantic Marine* and using the rationale and approach adopted by many of the above-cited opinions, the Court in the exercise of its discretion finds that severance of SSAB's claims against defendant Thyssenkrupp pursuant to Rule 21, Fed.R.Civ.P., is appropriate.  Accordingly, those claims are **severed** and **transferred** to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a) and the forum-selection clause contained in the TK Contract.[8]

## III.   Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.     Defendant Thyssenkrupp Materials NA, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer is **granted**;

2.     Plaintiff's claims against defendant Thyssenkrupp are **severed** from plaintiff's claims against defendant Kem-Bonds, pursuant to Rule 21;

---

[8]     In opposition to the Motion to Dismiss or Transfer, SSAB indicates that the forum-selection clause in the TK Contract "waives the right to trial by jury.  If this section is applicable then the contract claims against TK would be non-jury."  (Doc. 42, at 9.)  Plaintiff does not explain how or why the jury-waiver portion of that clause bears in any way on the enforceability of the forum-selection provision.  There is no obvious reason why the mere presence of a jury waiver in Section IX.1 of the TK Contract would weigh against enforcement of the provision requiring that claims against Thyssenkrupp arising from that contract must be brought in the state or federal courts of Cook County, Illinois.

3.      Plaintiff's claims against defendant Thyssenkrupp are **transferred** to the United

        District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §

        1404(a), the terms of the applicable forum-selection clause, and the directives of

        the Supreme Court in *Atlantic Marine*; and

4.      Plaintiff's claims against defendant Kem-Bonds shall remain pending in this

        District Court, in accordance with the terms of the forum-selection clause in the

        contracts between SSAB and Kem-Bonds.


DONE and ORDERED this 12th day of December, 2017.

                              s/ WILLIAM H. STEELE
                              UNITED STATES DISTRICT JUDGE